IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| PATSY J. WISE, REGIS CLIFFORD, CAMILLE ANNETTE BAMBINI, SAMUEL GRAYSON BAUM, DONALD J. TRUMP FOR PRESIDENT INC., U.S. CONGRESSMAN DANIEL BISHOP, U.S. CONGRESSMAN GREGORY F. MURPHY, REPUBLICAN NATIONAL COMMITTEE, NATIONAL REPUBLICAN SENATORIAL COMMITTEE, NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE, and NORTH CAROLINA REPUBLICAN PARTY,<br><br>*Plaintiffs, vs.*<br><br>THE NORTH CAROLINA STATE BOARD OF ELECTIONS; DAMON CIRCOSTA, in his official capacity as CHAIR OF THE STATE BOARD OF ELECTIONS; STELLA ANDERSON, in her official capacity as SECRETARY OF THE STATE BOARD OF ELECTIONS; JEFF CARMON III, in his official capacity as MEMBER OF THE STATE BOARD OF ELECTIONS; KAREN BRINSON BELL, in her official capacity as EXECUTIVE DIRECTOR OF THE STATE BOARD OF ELECTIONS,<br><br>*Defendants.* | Civil Action No. 5:20-cv-505-D |

**MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER VENUE**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................... 1

ARGUMENT ................................................................................................................................. 2

    I.    The Board Has Not Carried Its Heavy Burden Under Section 1404 To Justify
        Transferring Venue. ................................................................................................... 2

        A.   This Case Could Not Have Been Brought in the Middle District. .............................. 3

        B.   The Board Has Not Made a Showing Sufficient To Overcome the Strong
            Presumption in Favor of Plaintiffs' Choice of Forum. ................................................ 5

    II.   The First-to-File Rule Does Not Apply. ................................................................... 9

CONCLUSION ............................................................................................................................ 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Barrett v. USA Serv. Fin., LLC.*,
  No. 4:18-CV-155, 2019 WL 1051177 (E.D.N.C. Mar. 5, 2019) ............................................10

*Bourne v. McNealy-Minor*,
  No. 7:19-CV-236-FL, 2020 WL 1491549 (E.D.N.C. Mar. 27, 2020) ......................................2

*In re Bozic*,
  888 F.3d 1048 (9th Cir. 2018) ...............................................................................................9

*Cable-La, Inc. v. Williams Comm'cns, Inc.*,
  104 F. Supp. 2d 569 (M.D.N.C. 1999) ................................................................................2, 3

*Carbide & Carbon Chem. Corp. v. U.S. Indus. Chem.*,
  140 F.2d 47 (4th Cir. 1944) ..................................................................................................10

*Democracy N.C. v. N.C. State Bd. of Elections*,
  No. 20-cv-457 (M.D.N.C.) ............................................................................................ *passim*

*Elec. Sys. Prot., Inc. v. Innovolt, Inc.*,
  No. 5:09-CV-464-FL, 2010 WL 2813503 (E.D.N.C. July 14, 2010) ..................................5, 6

*Gaspar v. McCament*,
  No. 5:17-CV-459-BO, 2018 WL 5892358 (E.D.N.C. 2018) ..................................................3

*Hoffman v. Blaski*,
  363 U.S. 335 (1960) ................................................................................................................2

*Hunter v. Mountain Commerce Bank*,
  No. 1:15cv1050, 2016 WL 5415761 (M.D.N.C. Sept. 28, 2016) ............................................5

*Jackson v. Leake*,
  No. 1:05CV00691, 2006 WL 2264027 (M.D.N.C. Aug. 7, 2006) ..........................................4

*Jennings v. Rodriguez*,
  138 S. Ct. 830, 200 L. Ed. 2d 122 (2018) ...............................................................................9

*League of Women Voters of Fla. v. Browning*,
  No. 08-21243, 2008 WL 11332046 (S.D. Fla. May 29, 2008) ................................................9

*O'Neill v. Battisti*,
  472 F.2d 789 (6th Cir. 1972) ..................................................................................................3

*Republican Party of N. Carolina v. Martin*,
  682 F. Supp. 834 (M.D.N.C. 1988) ...........................................................................3, 4

*Tariff Grp. Inc. v. Cheer Athletics Inc.*,
  No. 3:19-CV-00476, 2019 WL 6974283 (M.D.N.C. Dec. 18, 2019) .......................5

*Taylor v. Sturgell*,
  553 U.S. 880 (2008) ....................................................................................................7

*Utility Air Regulatory Grp. v. EPA*,
  573 U.S. 302 (2014) ....................................................................................................9

*Vape Guys, Inc. v. Vape Guys Distrib., Inc.*,
  No. 3:19cv298, 2020 WL 1016443 (E.D. Va. Mar. 2, 2020) ....................................6

*Virginia Hosp. Ass'n v. Baliles*,
  830 F.2d 1308 (4th Cir. 1987) ...................................................................................7

**Statutes**

28 U.S.C. § 1391(b) ...............................................................................................................3, 4

28 U.S.C. § 1404(a) ........................................................................................................ *passim*

N.C.G.S. § 163-20(b) .................................................................................................................3

# INTRODUCTION

Plaintiffs have filed an emergency motion for a temporary restraining order because the North Carolina Board of Elections is unlawfully usurping the authority of the General Assembly. Instead of complying with North Carolina's election laws, the Board has acted in *ultra vires* fashion to cut a back room deal that seeks to rewrite the laws for political ends. The Board's extraordinary actions violate essential constitutional guarantees, including those set forth in the Elections and Electors Clauses and the Equal Protection and Due Process Clauses of the United States Constitution. Emergency relief is necessary to protect the federal constitutional interests at stake and to prevent irreparable harm to the state's voters, the candidates running for election, the political parties, and others involved in the political process.

Instead of responding to the emergency motion on its merits or even attempting to defend its rule-of-law violations, the Board has filed a motion seeking to transfer this case to the Middle District of North Carolina. This improper delay tactic has no merit and should be rejected. The Court has no discretion to grant the Board's transfer request because this case could not have been brought in the Middle District. *See* 28 U.S.C. § 1404(a) (transfer only permitted to district where action "might have been brought"). Because the Board resides in this district and conducts its official business in this district, and because the official actions challenged in this case occurred in this district, the Middle District would not have been a proper venue. Moreover, and in any event, the Board has not carried its heavy burden to upset the strong presumption in favor of plaintiffs' choice of forum. Where, as here, litigation has been filed in the home forum of both some of the plaintiffs and all of the defendants, and where the defendants' official actions occurred in this district, there is no serious argument that a transfer could serve the convenience of the parties or witnesses or even the interests of justice.

The first-to-file rule also does not apply, both because this case could not have been filed in the Middle District, and because this case involves different parties and does not raise the same issues as the litigation pending before the Hon. William L. Osteen, Jr. *See Democracy N.C. v. N.C. State Bd. of Elections*, No. 20-cv-457 (M.D.N.C.). The plaintiffs here were denied the right to intervene in the Middle District litigation and, because they are participating only as *amici curiae* in those proceedings, do not have the right to litigate in that venue the important and distinct constitutional claims that have been filed in this case. These claims deserve to be heard promptly by this Court in the venue where they were first and properly filed. The motion to transfer should be denied.

## ARGUMENT

### I. The Board Has Not Carried Its Heavy Burden Under Section 1404 To Justify Transferring Venue.

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division *where it might have been brought*." 28 U.S.C. § 1404(a). To succeed in a motion to transfer venue, the moving party must first demonstrate that the proposed venue is a district in which the action "might have been brought." *See Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960) (noting that the power to transfer depends "upon whether the transferee district was one in which the action 'might have been brought' by the plaintiff"); *see also Cable-La, Inc. v. Williams Comm'cns, Inc.*, 104 F. Supp. 2d 569, 574 (M.D.N.C. 1999) (noting that this is the "first step" in addressing a motion to transfer). The moving party must then meet its "heavy burden" of showing that the private and public interest factors weigh so clearly in favor of transfer that the court should disregard the "strong presumption" in favor of plaintiffs' choice of forum. *Bourne v. McNealy-Minor*, No. 7:19-CV-236-FL, 2020 WL 1491549, at *5 (E.D.N.C. Mar. 27, 2020) (quoting *Piper*

2

*Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981)). The Board has not satisfied either of these basic requirements.

### A. This Case Could Not Have Been Brought in the Middle District.

To determine whether the "proposed transferee court is one which the action originally 'might have been brought,'" courts consider whether "venue is proper there." *Cable-La*, 104 F. Supp. 2d at 574. Venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). Venue is also proper in any district where "a substantial part of the events or omissions giving rise to the claim occurred." § 1391(b)(2). Both tests establish that this case could not have been brought in the Middle District.

*First*, because this case seeks relief against the Board as state officers acting in their official capacities, *see* Compl. ¶¶ 46-50, the action had to be brought in the judicial district in which the Board performs its official duties. *See O'Neill v. Battisti*, 472 F.2d 789, 791 (6th Cir. 1972). As courts have long recognized, when a public official "is a party to an action in his official capacity, he resides in the judicial district where he maintains his official residence, that is, where he performs his official duties." *Republican Party of N. Carolina v. Martin*, 682 F. Supp. 834, 836 (M.D.N.C. 1988); *see also Gaspar v. McCament*, No. 5:17-CV-459-BO, 2018 WL 5892358, at *1 (E.D.N.C. 2018) (dismissing case and transferring venue because no evidence that official performed duties in this district, "as would be required to establish venue here").

The Board is located in Raleigh, North Carolina, in the Eastern District. The Board performs its official duties in Raleigh, and by statute is expected to "meet in its offices in the City of Raleigh." N.C.G.S. § 163-20(b) (the "State Board of Elections shall meet in its offices in the City of Raleigh, or at another place in Raleigh to be designated by the chairman"). As courts have previously recognized, "[t]he Board of Elections maintains its official offices in Raleigh, North

3

Carolina and meets in Raleigh" when conducting official business. *Jackson v. Leake,* No. 1:05CV00691, 2006 WL 2264027, at *10 (M.D.N.C. Aug. 7, 2006) (holding that Board member's "official residence, as a member of the Board, is Raleigh, North Carolina, in the Eastern District of North Carolina"). Accordingly, because the Board performs its official duties and maintains its official residence in Raleigh, venue is proper in the Eastern District. Venue would not be proper in the Middle District, where the Board does not reside. *See id.*

**Second**, for the same reason, all of the events giving rise to the claims occurred in the Eastern District. *Cf. Republican Party of N. Carolina*, 682 F. Supp. at 837 (explaining that the "'claim arose' language of § 1391(b) should not be considered when all defendants reside in the same district") (quoting *Canady v. Koch*, 598 F. Supp. 1139, 1147-48 (E.D.N.Y. 1984)). Plaintiffs allege that the Board has violated the U.S. Constitution by taking action that unlawfully seeks to suspend the requirements and procedures for absentee voting in North Carolina contrary to the laws duly promulgated by the General Assembly. These official actions were all taken by Board, acting in its official capacity, in Raleigh, North Carolina. As courts have recognized—in the specific context of considering the proper venue for litigating claims against the Board—when a federal court is considering the "constitutionality of a state law or action," the claim arises "where the policy makers resided and where the policies were developed." *Id.*

The Board has presented no evidence that it resides in the Middle District. It merely asserts in cursory fashion that its members represent "a state agency with state-wide authority to administer elections." Bd. Br. 10. But that argument has already been rejected in cases involving the Board. *See Republican Party of N. Carolina*, 682 F. Supp. at 836 (holding that the mere fact that the Board has a state-wide "supervisory role" does not mean that it has a state-wide "official residence"); *see also Leake,* 2006 WL 2264027, at *10. The Board offers no reason to revisit that

4

precedent or the settled legal principles establishing that the Board resides in the Eastern District, where it maintains its official residence. Accordingly, this Court has no discretion to transfer this case to another district under 28 U.S.C. § 1404(a).

**B. The Board Has Not Made a Showing Sufficient To Overcome the Strong Presumption in Favor of Plaintiffs' Choice of Forum.**

Even if this Court had discretion to transfer this case, which it does not, plaintiffs' decision to bring suit in the Eastern District should not be disturbed. As the Board concedes, a plaintiff's choice of venue is entitled to "substantial weight." Bd. Br. 11 (citing *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs.*, 791 F.3d 436, 444 (4th Cir. 2015)); *see also Hunter v. Mountain Commerce Bank*, No. 1:15cv1050, 2016 WL 5415761, at *11 (M.D.N.C. Sept. 28, 2016) ("A 'plaintiff's choice of forum is often the most important factor in a transfer of venue analysis'"). Indeed, because venue is indisputably proper in this District, the Board bears a "particularly heavy burden." *Tariff Grp. Inc. v. Cheer Athletics Inc.*, No. 3:19-CV-00476, 2019 WL 6974283, at *2 (M.D.N.C. Dec. 18, 2019). It is "black letter law" that "plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice … should not be lightly disturbed." *Id*. (quoting *Phillips v. S. Gumpert Co., Inc.*, 627 F. Supp. 725, 726-27 (W.D.N.C. 1986)). A transfer should be granted only if the balance of factors weighs "strongly in favor" of the Board's position. *Elec. Sys. Prot., Inc. v. Innovolt, Inc.*, No. 5:09-CV-464-FL, 2010 WL 2813503, at *2 (E.D.N.C. July 14, 2010).

The Board cannot deny that plaintiffs' cause of action has a strong connection to the Eastern District. As noted above, the Board resides and conducts its official business in this District. The Board's official acts that are challenged in this action occurred within the Eastern District. And, although the Board contends that its personnel are willing to appear as witnesses in the Middle District, Bd. Br. 11-12, the fact remains that they are present in this District and are

subject to subpoena here, and this District is more convenient for them. Moreover, this action has been filed in the home forum of plaintiffs Patsy J. Wise and Gregory F. Murphy. *See* Compl. ¶ 25 (alleging Patsy J. Wise is a registered voter in Sampson County, North Carolina); *id*. ¶ 32 (alleging that Gregory F. Murphy represents the citizens of North Carolina's Third Congressional District). In these circumstances, where both plaintiffs and the Board reside in the Eastern District, "convenience to parties and witnesses" cannot justify a transfer of venue. *Elec. Sys. Prot.*, 2010 WL 2813503, at *2; *see also Vape Guys, Inc. v. Vape Guys Distrib., Inc.*, No. 3:19cv298, 2020 WL 1016443, at *19-20 (E.D. Va. Mar. 2, 2020) (noting that when a plaintiff chooses to file its case in its home forum, the convenience of parties "rarely, if ever, operates to justify transfer") (citing cases).

The Board nonetheless contends that transfer is warranted because, in its view, this case substantially overlaps with another case involving different issues, different claims, and different parties that is being litigated before Judge Osteen in the Middle District. *See Democracy North Carolina v. N.C. State Bd. of Elec.*, No. 1:20-cv-457 (M.D.N.C.). But any "overlap" is not sufficient to justify transfer. While both cases raise issues that relate in general to North Carolina's election laws, the gravamen and specifics of the cases are very different.

***First***, the claims in the two cases are distinct. In *Democracy N.C.*, certain nonprofit organizations and individual voters sought an injunction against the state's voter registration deadline and sought to enjoin the enforcement of certain North Carolina laws that govern what types of identification are acceptable when voters submit an absentee ballot, what restrictions apply to individuals who assist voters in returning absentee ballots, and what witness requirements apply when a citizen votes by absentee ballot. *See* 2020 WL 4484063, at *4 (M.D.N.C. Aug. 4, 2020). None of those claims raise the federal constitutional claims at issue in this case. None of

6

those claims challenge the *ultra vires* actions by the Board. And none seek relief to enforce voters' equal protection and due process rights or to protect the General Assembly's prerogative to regulate federal elections in North Carolina.

**Second**, the parties are distinct. The nonprofit organizations and individual voters that filed suit in *Democracy N.C.* are not parties to this case. Similarly, the plaintiffs here are not parties in *Democracy N.C.* To the contrary, as the Board acknowledges, plaintiffs in this case were denied intervention in *Democracy N.C.* (due to the Board's objection) and have participated only as *amici curiae*—meaning that by definition they are not parties to the suit. *See*, *e.g.*, *Taylor v. Sturgell*, 553 U.S. 880, 888 n.1 (2008) (noting that party that filed amicus brief was not a party to the underlying suit); *Virginia Hosp. Ass'n v. Baliles*, 830 F.2d 1308, 1313 (4th Cir. 1987) (explaining that collateral estoppel does not apply against *amicus curiae* because they have no control over the litigation) (citations omitted). The only common party is the Board, which again should not be heard to object to being sued in its home district.

**Third**, and contrary to the Board's mistaken suggestions, nothing about this case could put the Board in the "position of failing to comply with the orders of another federal court." Bd. Br. 13. In *Democracy N.C.*, Judge Osteen largely rejected the challenges brought against the state statutes. The settlement that the Board has unlawfully entered seeking to rewrite state law was not necessitated by *Democracy N.C.*; instead, it was reached in response to a series of state court lawsuits. *See* Compl. ¶¶ 72-81. Not surprisingly, many of the duly enacted laws that the Board is seeking to rewrite are not addressed in Judge Osteen's injunction order in the *Democracy N.C.* litigation. For example, as the complaint alleges, the Board is seeking to rewrite the statutory requirements for determining when an absentee ballot is timely received. *See id.* ¶ 86 (noting that the statute permits ballots to be counted if received within 3 days after election day, and the Board

7

seeks to rewrite the statute to extend to 9 days after election day). Similarly, the Board is changing the statutory postmark requirement for absentee ballots, changing how a ballot should be treated if it contains no postmark. *See id.* ¶ 87. The Board is also seeking to change the statutory requirements prohibiting ballot harvesting. *See id.* ¶ 89. Judge Osteen's order does not address these issues.

To be sure, Judge Osteen did preliminarily enjoin the Board "from the disallowance or rejection, or permitting the disallowance or rejection, of absentee ballots without due process as to those ballots with a material error that is subject to remediation." *Democracy N.C.*, 2020 WL 4484063, at *64. Judge Osteen thus concluded that individuals affected by certain statutory provisions were entitled to have their due process rights protected, and his order contemplates either *new law* or *legislative rulemaking* if necessary to address those concerns—in other words, if necessary, changes to law made through proper legislative processes. *See id.* (enter an injunction until the Legislative or Executive branches "implement a law or rule"). In compliance with Judge Osteen's order, the Board issued Numbered Memo 2020-19 on August 21 setting forth cure procedures that were consistent with the statutes and within its proper authority. But on September 22, as part of the Consent Judgment challenged in this case, the Board rewrote Numbered Memo 2020-19, stretching to eliminate the very statutory Witness Requirement that Judge Osteen upheld. And, as the complaint in this action shows, the Board's improper actions go well beyond its rewrite of Numbered Memo 2020-19; it entered a lengthy Consent Judgment and issued three other Numbered Memos, none of which relate to Judge Osteen's order. Those *ultra vires* actions were not necessary. The Board could have readily complied with Judge Osteen's order without engaging in unlawful acts and attempting to rewrite North Carolina law. Indeed, Judge Osteen did not authorize, and could not have authorized, the Board to rewrite the Witness Requirement and

other statutory requirements through a Consent Judgment. No court has that authority. *See Utility Air Regulatory Grp. v. EPA*, 573 U.S. 302, 328 (2014) (noting that an "agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate"); *Jennings v. Rodriguez*, 138 S. Ct. 830, 843, 200 L. Ed. 2d 122 (2018) ("Spotting a constitutional issue does not give a court the authority to rewrite a statute as it pleases.").

The Board cannot overcome the reality that resolving the claims in this case do not turn on whether Judge Osteen may or may not accept the Consent Judgment as consistent with his previous order. Even if Judge Osteen accepts the Consent Judgment as consistent with his ruling in *Democracy N.C.* that would not change the need for this Court to consider the separate issue of whether the official actions taken by the Board in its official capacity in this district—including actions that go beyond the Consent Judgment—usurp the General Assembly's authority and violate the Constitution. That broader issue, and the specific constitutional claims that have been raised in this case, are not properly before Judge Osteen, including because the plaintiffs here were denied intervention and are not parties to *Democracy N.C.*

***Fourth***, the interests of justice strongly weigh against granting the transfer motion because the "[t]imely resolution of th[is] case is highly relevant." *League of Women Voters of Fla. v. Browning*, No. 08-21243, 2008 WL 11332046, at *4 (S.D. Fla. May 29, 2008). Because of the immediate need for emergency relief, and because of the delays that "could potentially arise from transfer," the interest of justice favor denying the motion. *Id*.

## II. The First-to-File Rule Does Not Apply.

Because it is merely a rule of judicial discretion, the first-to-file rule cannot be employed to "contravene [the] congressionally enacted" requirements of Section 1404(a). *In re Bozic*, 888 F.3d 1048, 1054 (9th Cir. 2018). Accordingly, because this case could not have been brought in the Middle District, the rule is irrelevant to this case. *See id*. (holding that "the first-to-file rule"

9

cannot "negate[] § 1404(a)'s requirements that an action may be transferred only to a district where it 'might have been brought'").

In any event, the Board has not satisfied the requirements for invoking the first-to-file rule. The rule applies only when "a prior suit [is] pending in which *all issues* could be tried with equal facility." *Carbide & Carbon Chem. Corp. v. U.S. Indus. Chem.,* 140 F.2d 47, 49 (4th Cir. 1944). The Court must therefore consider not only the chronology of filings but also "the similarity of the parties" and the "similarity of the issues at stake." *Barrett v. USA Serv. Fin., LLC.,* No. 4:18-CV-155, 2019 WL 1051177, at *5 (E.D.N.C. Mar. 5, 2019) (quotation omitted).

The Board has not shown that the first-to-file rule applies because it cannot show that the *Democracy N.C.* case involves the same parties or the same issues. To the contrary, and as explained above, this case involves parties and raises issues that are distinct from the issues raised in the *Democracy N.C.* case. Moreover, because emergency relief is urgently needed to prevent the Board from upending duly enacted law, and because a transfer could prevent the timely entry of a temporary restraining order necessary to prevent irreparable harm, it is clear that the issues here could not be tried with "equal facility" in other litigation.

\* \* \* \*

This case has been properly filed in the district in which the Board conducts its official business and took the official acts that are the subject of this lawsuit. Instead of responding on the merits to plaintiffs' request for a temporary restraining order, the Board has raised a meritless objection to litigating in the only forum that, by statute, venue properly exists. The Board recognizes that transferring this case will create unnecessary delay and potentially prevent any court from entering timely relief. To avoid this injustice and consistent with the requirements of Section 1404, plaintiffs urge the Court to deny the motion to transfer, and then to grant a temporary

restraining order to prevent irreparable harm while the Court considers the vital federal issues raised by this egregious and *ultra vires* attack on North Carolina's election laws.

## **CONCLUSION**

For the reasons set forth above, the plaintiffs urge the Court to deny the motion to transfer.

Respectfully submitted,

Dated: September 30, 2020  By: */s/ R. Scott Tobin*

R. Scott Tobin, N.C. Bar No. 34317
Taylor English Duma LLP
4208 Six Forks Road, Suite 1000
Raleigh, North Carolina 27609
Telephone: (404) 640-5951
Email: stobin@taylorenglish.com

Bobby R. Burchfield (*special appearance pending*)
Matthew M. Leland (*special appearance pending*)
King & Spalding LLP
1700 Pennsylvania Avenue, N.W., Suite 200
Washington, D.C. 20006
Telephone: (202) 626-5524
Email: bburchfield@kslaw.com
Email: mleland@kslaw.com

*Counsel for Plaintiffs*

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.2(f)(4), the undersigned counsel hereby certifies that the foregoing Memorandum, including body, headings, and footnotes, contains 3,464 words as measured by Microsoft Word.

Respectfully submitted this the 30th day of September, 2020.

                                                */s/ R. Scott Tobin*
                                                R. Scott Tobin

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of September, 2020, I electronically filed the foregoing document using the court's CM/ECF system and that I have electronically mailed the documents to all non-CM/ECF participants.

*/s/ R. Scott Tobin*
R. Scott Tobin
