# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
# WESTERN DIVISION

| | |
|---|---|
| PATSY J. WISE, REGIS CLIFFORD, CAMILLE ANNETTE BAMBINI, SAMUEL GRAYSON BAUM, DONALD J. TRUMP FOR PRESIDENT INC., U.S. CONGRESSMAN DANIEL BISHOP, U.S. CONGRESSMAN GREGORY F. MURPHY, REPUBLICAN NATIONAL COMMITTEE, NATIONAL REPUBLICAN SENATORIAL COMMITTEE, NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE, and NORTH CAROLINA REPUBLICAN PARTY, <br><br>        Plaintiffs, <br><br>  v. <br><br>THE NORTH CAROLINA STATE BOARD OF ELECTIONS; DAMON CIRCOSTA, in his official capacity as CHAIR OF THE STATE BOARD OF ELECTIONS; STELLA ANDERSON, in her official capacity as SECRETARY OF THE STATE BOARD OF ELECTIONS; JEFF CARMON III, in his official capacity as MEMBER OF THE STATE BOARD OF ELECTIONS; KAREN BRINSON BELL, in her official capacity as EXECUTIVE DIRECTOR OF THE STATE BOARD OF ELECTIONS, <br><br>        Defendants, <br><br>        and <br><br>NORTH CAROLINA ALLIANCE FOR RETIRED AMERICANS, BARKER FOWLER, BECKY JOHNSON, JADE JUREK, ROSALYN KOCIEMBA, TOM KOCIEMBA, SANDRA MALONE, and CAREN RABINOWITZ, | Civil Action No. 5:20-cv-505 |

(Proposed)
Intervenor-Defendants.

# MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE AS DEFENDANTS

## I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 24, Proposed Intervenor-Defendants North Carolina Alliance for Retired Americans (the "Alliance"), Barker Fowler, Becky Johnson, Jade Jurek, Rosalyn Kociemba, Tom Kociemba, Sandra Malone, and Caren Rabinowitz (collectively "Alliance Intervenors") move to intervene as defendants in the above-titled action.

Plaintiffs the Republican National Committee, National Republican Senatorial Committee, National Republican Congressional Committee, Donald J. Trump for President, Inc., and the North Carolina Republican Party (collectively "Republican Committees") are currently parties to an ongoing state court action in which the Alliance Intervenors challenge several restrictions to in-person and absentee voting as applied in the November general election (the "State Court Lawsuit"). Last week, the Alliance Intervenors and the North Carolina State Board of Elections and its chair, Damon Circosta (collectively, the "State Board") filed a joint motion for entry of a consent judgment in the State Court Lawsuit, which referenced and attached three numbered memos that Plaintiffs now seek to attack in this lawsuit. *See* Pls.' and Executive Defs.' Joint Mot. for Entry of a Consent Judgment, Exhibit 1. The Alliance Intervenors and State Board's motion is being heard today, October 2, and is still pending before the Wake County Superior Court. But, rather than lodge their objections in the State Court Lawsuit in accordance with state court procedures, the Republican Committees have joined forces with four individual voters and two Republican congressional candidates in a pre-emptive, collateral attack against the proposed settlement.

Never mind that the Wake County Superior Court has indicated it intends to consider exactly the types of objections that Plaintiffs now seek to raise with this Court instead. By filing this action, Plaintiffs ask this Court to sit in review of the Wake County Superior Court proceedings and effectively enjoin any ruling that would result in the State Court's approval of the proposed

Consent Judgment. Not only is this lawsuit procedurally (and legally) improper, Plaintiffs' requested relief would deny the Alliance Intervenors rights guaranteed under the state Constitution, including the ability to exercise the franchise safely and reliably in the midst of the coronavirus pandemic. Plaintiffs' attempt to preemptively undermine a State Court judgment in the State Court Lawsuit poses a clear and direct threat to Alliance Intervenors' rights and legal interests.

For the reasons set forth below, Alliance Intervenors meet the requirements for intervention as a matter of right under Rule 24(a)(2). In the alternative, the Alliance Intervenors request that the Court grant them permissive intervention pursuant to Rule 24(b). In accordance with Rule 24(c), a proposed Answer is attached as Exhibit 1 to Alliance Intervenors' Motion to Intervene.

## II.  BACKGROUND

On August 10, 2020, Alliance Intervenors filed a complaint, which they amended on August 18, in the General Court of Justice, Superior Court Division, Wake County, challenging certain election laws and procedures that impose undue burdens on in-person and absentee voting for the November election, in light of the COVID-19 pandemic, under the Free Elections Clause, art. I, § 10, and the Equal Protection Clause, art. I, § 19, of the North Carolina Constitution. Am. Compl. ¶¶ 122-141. *N.C. All. for Retired Americans v. N.C. State Bd. of Elections*, No. 20-CVS-8881. The State Court Lawsuit names the State Board as defendants. The President Pro Tempore of the North Carolina Senate and the Speaker of the North Carolina House of Representatives intervened in that lawsuit pursuant to N.C.G.S. § 1-72.2(b), which provides them with "standing to intervene on behalf of the General Assembly as a party in any judicial proceeding challenging a North Carolina statute or provision of the North Carolina Constitution." On August 24, the Republican Committees moved to intervene as defendants. Both groups were admitted into the case.

Alliance Intervenors moved for a preliminary injunction on August 18, 2020, seeking an order (1) enjoining the enforcement of the absentee ballot receipt deadline set forth in N.C.G.S. § 163-231(b)(1), (2), as applied to ballots submitted through the United States Postal Service (USPS) for the November general election, and ordering the State Board to count as otherwise eligible ballots postmarked by Election Day and received by county boards of elections up to nine days after Election Day; (2) enjoining the enforcement of the witness requirements for absentee ballots set forth in N.C.G.S. § 163-231(a), as applied to voters residing in single person or single-adult households; (3) enjoining the enforcement of N.C.G.S. § 163-231(b)(1) to the extent that it requires voters to pay for postage to mail their ballots, and ordering the State Board to provide postage for absentee ballots submitted by mail in the November election; (4) enjoining the enforcement of N.C.G.S. §§ 162-226.3(a)(5), 163-230.2(c) and (e), 163-231(b)(1), and any other laws that prohibit individuals or organizations from assisting voters to submit absentee ballots or to fill out and submit absentee ballot request forms; and (5) enjoining the enforcement of N.C.G.S. § 163-227.2(b) and any other laws that prevent county election officials from providing additional one-stop ("early") voting days and ordering the State Board to allow county election officials to expand early voting by up to an additional 21 days for the November election. In support of their motion, Plaintiffs filed a memorandum along with over 500 pages of evidence in the form of expert reports, voter and other witness affidavits, and official documents.

Before the preliminary injunction hearing, Alliance Intervenors and the State Board reached an agreement to potentially resolve Alliance Intervenors' claims and filed a Joint Motion for Entry of a Consent Judgment, along with the proposed Consent Judgment and three exhibits thereto (Numbered Memos 2020-19, 2020-22, and 2020-23). The express objective of the proposed Consent Judgment is:

> to avoid any continued uncertainty and distraction from the uniform administration of the 2020 elections, protect the limited resources of the Consent Parties, ensure that North Carolina voters can safely and constitutionally exercise the franchise in the 2020 elections, and ensure that election officials have sufficient time to implement any changes for the 2020 elections and educate voters about these changes.

Consent Judgment § V.

Under the terms of the proposed Consent Judgment, the State Board would agree to: (1) count ballots postmarked by Election Day, if they are otherwise eligible and received up to nine days after Election Day (the same deadline imposed for military and overseas voters), *see* N.C.G.S. §§ 163-258.10, 163-258.12(a), 163-182.5(b); (2) maintain a cure process for certain deficiencies with absentee ballots, including missing voter, witness, or assistant signatures and addresses; (3) instruct county boards to designate separate, *manned* absentee ballot drop-off stations at all one-stop early voting locations and county board offices, at which voters and authorized persons may return absentee ballots in person; and (4) take reasonable steps to inform the public of these changes. Consent Judgment § VI. Alliance Intervenors agreed to withdraw their Motion for Preliminary Injunction, and to dismiss their remaining claims upon entry of the Consent Judgment. *Id.*

Four days after Alliance Intervenors and the State Board filed their Joint Motion for Entry of a Consent Judgment, but *before* the state court's October 2, 2020, hearing on the motion, Plaintiffs filed their complaint in this Court. That same day, the other intervenors in the State Court Lawsuit, the President Pro Tempore of the North Carolina Senate and the Speaker of the North Carolina House of Representatives, filed a similar lawsuit, also before this Court, seeking similar relief: to preemptively enjoin enforcement of the proposed Consent Judgment currently pending before the Wake County Superior Court. *See Moore v. Circosta*, No. 4-20-cv-00505-D, ECF No. 1.

### III. ARGUMENT

#### A. Legal Standard

The Fourth Circuit has stated that "liberal intervention is desirable to dispose of as much of a controversy 'involving as many apparently concerned persons as is compatible with efficiency and due process.'" *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)).

Rule 24(a)(2) provides that "the court must permit anyone to intervene" as of right who:

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).

In the alternative, on timely motion, permissive intervention may be granted to anyone who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).

#### B. Alliance Intervenors have standing.

The Fourth Circuit has not addressed whether a proposed intervenor must establish Article III standing and, "given the silence on the issue by the Fourth Circuit," at least one district court has "decline[d] to impose such a requirement[.]" *N.C. State Conference of NAACP v. Cooper*, 332 F.R.D. 161, 165 (M.D.N.C. 2019). The Supreme Court's decision in *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645 (2017), suggests that Article III standing need not be established where, as here, applicants move to intervene as *defendants* and do not seek "relief that is different from that which is sought by a party with standing." *Id.* at 1651. In any event, even if Article III standing were required to intervene as defendants, Alliance Intervenors readily meet this standard.

At the outset, Alliance Intervenors have concrete, particularized, and legally protected interests in the entry and enforcement of the proposed Consent Judgment or any other relief that the Wake County Superior Court issues in response to Alliance Intervenors' state constitutional claims. The proposed Consent Judgment protects Alliance Intervenors' right to vote and to have that vote counted under the North Carolina Constitution, particularly in light of well-documented postal service delivery delays, and the health risks posed by the COVID-19 pandemic.[1] Potential infringement of constitutional rights is a legally cognizable interest sufficient to constitute injury in fact for purposes of intervention. *See, e.g.*, *Baker v. Carr*, 369 U.S. 186, 207–08 (1962) (finding impairment of the right to vote is a legally cognizable injury).

Plaintiffs' requested relief would also require the Alliance to divert time and resources from its other activities to remedy the suppressive and disenfranchising effects that a temporary restraining order would have on North Carolina voters. Specifically, the Alliance would have to engage in efforts to ensure that its members—the vast majority of whom are over the age of 65, placing them at elevated risk of severe illness from COVID-19—are not disenfranchised by the Election Day receipt deadline or other restrictions to voting by mail, particularly given the risk of conflicting judicial orders. Such an expenditure would necessarily divert resources from the Alliance's other pre-election activities, such as its robust public policy and issue advocacy work, all of which imposes cognizable harm on the organization and its members. *See, e.g.*, *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1040 (9th Cir. 2015) (finding "concrete and particular" injury where plaintiffs alleged that but for defendants' conduct, they "would be able to allocate

---

[1] *See, e.g.*, https://about.usps.com/who/legal/foia/documents/election-mail/election-mail-2020-pages-52-75.pdf; https://s3.amazonaws.com/dl.ncsbe.gov/sboe/numbermemo/2020/Numbered%20Memo%202020-14_Emergency%20Order%20of%20July%2017%2C%202020.pdf.

substantial resources to other activities central to [their] mission[s]" (alterations in original) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982))); *Crawford v. Marion Cty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007) (concluding "new law injure[d] the Democratic Party by compelling the party to devote resources" that it would not have needed to devote absent the new law), *aff'd*, 553 U.S. 181 (2008); *Democratic Nat'l Comm. v. Reagan*, 329 F. Supp. 3d 824, 841 (D. Ariz. 2018) (finding standing where law "require[d] Democratic organizations . . . to retool their [get-out-the-vote] strategies and divert [] resources"), *rev'd on other grounds sub nom. Democratic Nat'l Comm. v. Hobbs*, 948 F.3d 989 (9th Cir. 2020) (en banc).

In evaluating standing for purposes of an intervention motion, courts "accept as true the movants' allegations of injury, causation, and redressability, unless the pleading reflects a 'sham' or 'frivolity.'" *Liddell v. Special Admin. Bd.*, 894 F.3d 959, 965 (8th Cir. 2018) (quoting *Kozak v. Wells*, 278 F.2d 104, 109 (8th Cir. 1960)). As Alliance Intervenors have demonstrated, harm to their protected interests is clearly imminent and causally connected to the relief Plaintiffs seek. *See ACLU of Minn. v. Tarek ibn Ziyad Acad.*, 643 F.3d 1088, 1093 (8th Cir. 2011) (holding intervenor satisfied traceability requirement where defendant would have been compelled to cause alleged constitutional injury to intervenor if plaintiff prevailed). Alliance Intervenors therefore have standing to intervene as defendants in this action.

**C. Alliance Intervenors are entitled to intervene as a matter of right under Rule 24(a)(2).**

Alliance Intervenors satisfy the requirements to intervene in this action as of right. Specifically, (1) the motion is timely; (2) Alliance Intervenors have substantial interests in the subject matter of the action; (3) denial of their motion would impair or impede the Alliance Intervenors' ability to protect their interests; and (4) their interests are not adequately represented by the existing parties to the litigation. Fed. R. Civ. P. 24(a)(2); *Teague v. Bakker*, 931 F.2d 259,

260–61 (4th Cir. 1991).

### 1. Alliance Intervenors' motion to intervene is timely.

Filed less than a week after the Complaint in this action, the Alliance Intervenors' Motion is unquestionably timely. For this threshold requirement, courts must consider "first, how far the underlying suit has progressed; second, the prejudice any resulting delay might cause the other parties; and third, why the movant was tardy in filing its motion." *Alt v. U.S. EPA*, 758 F.3d 588, 591 (4th Cir. 2014). Here, the Alliance Intervenors seek to intervene at the earliest possible stage of the lawsuit, when no responsive pleadings have been filed by the Defendants in response to the Complaint; no further action has been taken on the merits of Plaintiffs' claims; nor is there a scheduling order. Because there has been no delay at all, the Alliance Intervenors clearly meet this requirement.

### 2. Alliance Intervenors have significant, legally cognizable interests in the substance of this litigation, the disposition of which may impair their ability to protect these interests.

Alliance Intervenors meet the third factor for intervention as of right because the disposition of Plaintiffs' collateral attack against the proposed Consent Judgment in the pending state court action may, "as a practical matter," impair or impede the ongoing proceedings concerning the entry of that Consent Judgment, and with it, the rights that it secures for the Alliance Intervenors. *Virginia v. Westinghouse Elec. Corp*, 542 F.2d 214, 216 (4th Cir. 1976); *see* Fed. R. Civ. P. 24(a)(2); *Teague*, 931 F.2d at 260–61 ("This court has interpreted Rule 24(a)(2) to entitle an applicant to intervention of right if the applicant can demonstrate . . . that the protection of this interest would be impaired because of the action.").

To intervene as of right, an applicant must have "a significantly protectable interest" in the outcome of the lawsuit. *Teague*, 931 F.2d at 261 (quoting *Donaldson v. United States*, 400 U.S. 517, 531 (1971)). In other words, the applicant must "stand to gain or lose" from the "legal

operation" of the judgment of that action. *Id.* And an applicant can demonstrate a protectable interest even when its gain or loss is "contingent upon the outcome of other pending litigation." *Id.* As the Fourth Circuit has acknowledged, litigants that obtained a judgment in a prior action are entitled to intervene as of right in a later action that threatens the relief awarded under the prior judgment. *See id.* (finding intervenors' "ability to protect their interest would be impaired or impeded" by a judgment that would put the intervenors' ability to satisfy a prior judgment at risk).

Because Plaintiffs' lawsuit effectively seeks to block a proposed Consent Judgment which is pending approval in an ongoing state court action in which Alliance Intervenors, the State Board, *and the Republican Committees are* parties, a court order granting Plaintiffs' requested relief will indisputably impede the ability of Alliance Intervenors to enforce their constitutional rights through the Consent Judgment or any other relief the Wake County Superior Court may order. *See Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 164 F.3d 1080, 1081–82 (8th Cir. 1999) (finding interest requirement "easily satisfie[d]" where "[t]he disposition of the lawsuit . . . may require resolution of legal and factual issues bearing on the validity of [] agreements" in which proposed intervenor had interests).

Beyond Alliance Intervenors' interests in enforcing the proposed Consent Judgment, they also risk infringement of their constitutional right to vote if Plaintiffs' requested relief is granted. As Alliance Intervenors argued in the state court action, the receipt deadline imposes a severe burden on voters in the November election who will encounter extended mail delivery timelines which are incompatible with the State's deadlines for the receipt of absentee ballots postmarked by Election Day, all during a global pandemic that imposes health risks on those who seek to vote in person. Alliance Intervenors—which include both individual voters who risk disenfranchisement and the North Carolina Alliance for Retired Americans, an organization

- 9 -
Case 5:20-cv-00505-D   Document 22   Filed 10/02/20   Page 11 of 16

dedicated to promoting the franchise and ensuring the full constitutional rights of its members—have a cognizable interest in protecting the constitutional rights that form the basis of their State Court Lawsuit and the rights of their members who might lose the ability to have their votes counted. *See, e.g.*, *Crawford*, 472 F.3d at 951 ("The Democratic Party [] has standing to assert the rights of those of its members who will be prevented from voting by the new law."); *Ohio Org. Collaborative v. Husted*, 189 F. Supp. 3d 708, 726 (S.D. Ohio 2016) (political party "established an injury in fact" where "the challenged provisions will make it more difficult for its members and constituents to vote"), *rev'd on other grounds sub nom. Ohio Democratic Party v. Husted*, 834 F.3d 620 (6th Cir. 2016). Moreover, as discussed in Part III.B *supra*, the disruptive and disenfranchising effects of Plaintiffs' lawsuit would require Alliance to divert resources to protect the rights of their members. Intervenors therefore satisfy the second and third requirements of Rule 24(a)(2).

### 3. Alliance Intervenors' interests are not adequately represented by the Defendants.

Finally, the Defendants in this case consist of the same parties who are adverse to Alliance Intervenors in the State Court Lawsuit. Under these circumstances, the Alliance Intervenors clearly satisfy the "minimal" burden of "demonstrating lack of adequate representation." *Teague*, 931 at 262. That the State Board is adverse to Alliance Intervenors in ongoing, related litigation is sufficient by itself to demonstrate a lack of adequate representation. *See*, *e.g.*, *Maxum Indem. Co. v. Biddle Law Firm*, *PA*, 329 F.R.D. 550, 556 (D.S.C. 2019) (finding intervenors interests were not adequately represented where parties seeking intervention were adverse to defendants in a related state-court action brought by the intervenors); *Hartford Acc. & Indem. Co. v. Crider*, 58 F.R.D. 15, 18 (N.D. Ill. 1973) (same).

Although Alliance Intervenors and the State Board were ultimately able to reach an agreement in state court, Alliance Intervenors have specific interests implicated by the litigation which they cannot rely on the State Board to adequately protect. Not only were Alliance Intervenors *forced to sue* the State Board to obtain any relief, the proposed Consent Judgment was the product of negotiation and compromise, requiring Alliance Intervenors to forego several of their claims. Accordingly, "there is no assurance that the state will continue to support all the positions taken" by the Alliance Intervenors. To the contrary, "what the state perceives as being in its interest may diverge substantially from" the interests of Alliance Intervenors. *Mille Lacs Band of Chippewa Indians v. Minnesota*, 989 F.2d 994, 1001 (8th Cir. 1993).

> As one court recently explained while granting intervention under similar circumstances,
>
> Although Defendants and the Proposed Intervenors fall on the same side of the dispute, Defendants' interests in the implementation of the [challenged law] differ from those of the Proposed Intervenors. While Defendants' arguments turn on their inherent authority as state executives and their responsibility to properly administer election laws, the Proposed Intervenors are concerned with ensuring their party members and the voters they represent have the opportunity to vote in the upcoming federal election . . . and allocating their limited resources to inform voters about the election procedures. As a result, the parties' interests are neither "identical" nor "the same."

*Issa v. Newsom*, No. 2:20-cv-01044-MCE-CKD, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020) (citation omitted).

Here, too, the State Board has an undeniable interest in defending both its plans for the November election and its inherent powers as a state agency. Alliance Intervenors have different interests: ensuring that they and their members will have meaningful and safe opportunities to cast ballots and ensuring that the Alliance's limited resources are not diverted. *See Paher v. Cegavske*, No. 3:20-cv-00243-MMD-WGC, 2020 WL 2042365, at *3 (D. Nev. Apr. 28, 2020) (concluding "Proposed Intervenors . . . have demonstrated entitlement to intervene as a matter of right" where

they "may present arguments about the need to safeguard [the] right to vote that are distinct from Defendants' arguments"). Because Alliance Intervenors cannot rely on the State Board (or anyone else in the litigation) to protect their distinct interests, they have satisfied the fourth requirement and are entitled to intervention as of right under Rule 24(a)(2). *See id.*; *Issa*, 2020 WL 3074351, at *4.

### D. In the alternative, Alliance Intervenors request that the Court grant them permission to intervene under Rule 24(b).

Even if Alliance Intervenors were not entitled to intervene as of right, permissive intervention would be warranted under Rule 24(b). "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). The court must consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). In deciding whether to grant permissive intervention, courts consider factors including "the nature and extent of the intervener's interest, the intervener's standing to raise relevant legal issues, the legal position the intervener seeks to advance, and its probable relation to the merits of the case." *L.S. ex rel. Ron S. v. Cansler*, No. 5:11-CV-354-FL, 2011 WL 6030075, at *2 (E.D.N.C. Dec. 5, 2011) (citing *Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326, 1329 (9th Cir. 1977)). They may also consider "whether changes have occurred in the litigation so that intervention that was once denied should be reexamined, whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit." *Id.* (citing *Spangler*, 552 F.2d at 1329).

For the reasons set forth above, the motion is timely, intervention will not unduly delay or prejudice the adjudication of the rights of the original parties, and the Alliance Intervenors are not

adequately represented by the existing defendants. The Alliance Intervenors will undoubtedly raise common questions of law and fact in defending this lawsuit and the proposed state court Consent Judgment, including this Court's authority to enjoin any order that the State Court may enter approving the Consent Judgment. Beyond that, the interests of Alliance Intervenors are constitutional in nature and extend to some of the most fundamental rights protected by the North Carolina Constitution: the right to free elections and to equal protection under the law. Their participation in this action will contribute to the full development of the factual and legal issues in this action and will aid the Court in the adjudication of this matter.

## IV. CONCLUSION

For the reasons stated above, Alliance Intervenors respectfully request that the Court grant their motion to intervene as a matter of right under Federal Rule of Civil Procedure 24(a)(2) or, in the alternative, permit them to intervene under Rule 24(b).

Dated: October 2, 2020

Respectfully submitted,

s/ *Uzoma N. Nkwonta*
Burton Craige, NC Bar No. 9180
Narendra K. Ghosh, NC Bar No. 37649
Paul E. Smith, NC Bar No. 45014
PATTERSON HARKAVY LLP
100 Europa Drive, Suite 420
Chapel Hill, NC 27517
Telephone: 919.942.5200
BCraige@pathlaw.com
NGhosh@pathlaw.com
PSmith@pathlaw.com

Marc E. Elias
Uzoma N. Nkwonta
Lalitha D. Madduri*
Jyoti Jasrasaria*
Ariel B. Glickman*
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 800

Washington, D.C. 20005
Telephone: 202.654.6200
Facsimile: 202.654.6211
MElias@perkinscoie.com
UNkwonta@perkinscoie.com
LMadduri@perkinscoie.com
JJasrasaria@perkinscoie.com
AGlickman@perkinscoie.com

Molly Mitchell*
PERKINS COIE LLP
1111 West Jefferson Street, Suite 500
Boise, Idaho 83702
Telephone: 208.343.3434
Facsimile: 208.343.3232
MMitchell@perksincoie.com

*Attorneys for Proposed Intervenor-Defendants*

*\*Notices of Special Appearance Forthcoming*